**This order is SIGNED.**

**Dated: March 5, 2021**



**JOEL T. MARKER**
**U.S. Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 20-24501 |
| BRANDON HARDMAN, | Chapter 13 |
| Debtor. | Hon. Joel T. Marker |

**MEMORANDUM DECISION**

The Debtor, Brandon Hardman, is a truck driver who has spent most of this case fighting with Iowa Tanklines, Inc. d/b/a ITL Tanklines, Inc. (ITL) about the ownership of a 2015 Peterbilt 389 (Truck), with each side relying on a subset of the universe of relevant documents to argue the point. The specific matter now before the Court is ITL's Motion for Determination that Property is Not Property of the Estate or in the Alternative Motion for Relief from the Automatic Stay (Motion),[1] in which ITL seeks a finding that the Truck belongs to the Debtor's legally distinct business rather than the Debtor personally or alternatively that grounds exist for stay relief. The Court has thoroughly reviewed the parties' submissions and issues this memorandum decision to explain its holding that the

---

[1] Dkt. #19.

estate has a sufficient interest in the Truck to support payment of ITL's secured claim through a chapter 13 plan and that stay relief is unwarranted at this time.[2]

## I. BACKGROUND

As for the Motion's tortured procedural history, the Debtor filed this chapter 13 case on July 25, 2020 along with his Statement of Financial Affairs, Schedules, and a Chapter 13 Plan proposing to pay ITL six months of adequate protection followed by the full amount of its secured claim at a proffered *Till* interest rate of 4.5%.[3] The docket fireworks between the Debtor and ITL began on September 10 when the Debtor filed an ill-conceived motion for sanctions against ITL,[4] which he ultimately withdrew about two hours before the scheduled hearing. On September 25, ITL filed both the Motion and an objection to confirmation of the Debtor's plan,[5] and the Debtor responded to the Motion on October 16.[6]

The Court held preliminary hearings on the Motion on October 28 and November 10, and the discussions from those hearings are incorporated herein by reference. ITL suggested at the November 10 hearing that it might raise an additional argument based on the postpetition termination of an independent contractor agreement, and the Court provided a schedule for an amended motion to be filed by ITL followed by a stipulation of facts and sequential briefs on all legal issues by both parties. But while the Court received

---

[2] This memorandum decision constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). Any findings of fact herein are also deemed to be conclusions of law, and any conclusions of law herein are also deemed to be findings of fact, and they shall be equally binding as both.
[3] Dkt. #s 1-3 and 9; proof of claim #8-1.
[4] Dkt. #15.
[5] Dkt. #s 18-19 and 21.
[6] Dkt. #30.

a stipulation of facts and a brief from ITL,[7] no ITL amended motion and no Debtor brief were filed.

Given the lack of clarity on whether the parties intended to proceed, the matter languished until the continued confirmation hearing on January 26, which is also incorporated herein by reference. At that hearing, the Truck issue was discussed yet again along with ITL's confirmation objection and the Chapter 13 Trustee's numerous outstanding issues preventing confirmation of the Debtor's proposed plan. The Court granted the Debtor's belated request to file an additional verified statement, which he did on February 7,[8] and the Debtor also filed an unauthorized late brief on February 8 which ITL allegedly agreed to not oppose.[9] ITL then objected to the Verified Statement and requested cross-examination of the Debtor,[10] but the Court declined the invitation since the Verified Statement offered nothing new of value, instead choosing to take the Motion under advisement and issue a written ruling. Given the Debtor's unreasonable delay in this case that is prejudicial to creditors, the Court also ordered that all issues raised by the Trustee and ITL must be resolved and that the Debtor's plan must be confirmed on or before the continued confirmation hearing on March 9, or the case will be dismissed pursuant to § 1307(c)(1) and (5) of the Bankruptcy Code.[11]

The substantive history between the parties is nearly as difficult as the procedural history of the Motion, and the Court incorporates the parties' Stipulated Findings of Fact.[12]

---

[7] Dkt. #s 42, 44, and 47.
[8] Dkt. #61.
[9] Dkt. #62.
[10] Dkt. #63.
[11] Dkt. #58. All statutory references are to title 11 of the United States Code unless otherwise specified.
[12] Dkt. #s 42 and 44. Other factual sources will be noted as necessary.

In short, ITL and McKrakin Trucking LLC—with Brandon Hardman signing on behalf of McKrakin—entered into an Independent Contractor Agreement in January 2016 involving a different truck than the one at issue in the Motion, presumably a truck that was already owned or leased by Mr. Hardman and/or McKrakin.[13] Then in February 2019, ITL executed an Installment Sales Agreement with "Brandon Hardman dba McKrakin Trucking, LLC" as the counterparty buying the Truck.[14] This was accompanied by a Bill of Sale transferring ownership of the Truck after a foreclosure sale from ITL to, again, "Brandon Hardman dba McKrakin Trucking, LLC."[15] ITL was also given authorization to apply for an Iowa certificate of title, which it did, but the application and title only listed the name "McKrakin Trucking LLC."[16] In October 2019, ITL entered into a new Independent Contractor Agreement, this time with "B & M Hardman Trucking Inc,"[17] and an Amendment to the Installment Sales Agreement was executed changing the Truck buyer's name from "Brandon Hardman dba McKrakin Trucking, Inc." to "Brandon Hardman dba B & M Hardman Trucking Inc."[18]

## II. DISCUSSION

As presented to the Court, the parties' dispute about the Truck is simultaneously narrow and complicated. Factual discrepancies, inconsistencies, and unclear statements abound, both large and small. Paragraph 2 of the Installment Sales Agreement provides that the weekly Truck payments "shall be payable on the same day that Buyer receives his weekly settlement from [ITL], under the Independent Contractor Agreement by and

---

[13] Dkt. #42, Ex. C.
[14] *Id.*, Ex. A.
[15] *Id.*, Ex. B.
[16] *Id.*, Exs. D-G.
[17] *Id.*, Ex. H.
[18] *Id.*, Ex. L.

between [ITL] and Buyer dated February 4, 2019," but no such agreement is in the record—only the January 2016 and October 2019 Independent Contractor Agreements, and the contractor in the January 2016 agreement is only McKrakin Trucking LLC rather than Brandon Hardman dba McKrakin Trucking, LLC.[19]  Brandon Hardman's signature appears on the Buyer's signature block in the Installment Sales Agreement, but unhelpfully on behalf of "[i]ts: [o]wner/self/officer/partner," while the Bill of Sale was signed by Brandon Hardman with no other indication that he was signing on behalf of a separate legal entity.  Both Independent Contractor Agreements only require that the contractor "has title to or is authorized to contract" the vehicle being driven for ITL.  The January 2016 Independent Contractor Agreement provides for a personal guaranty by "[t]he individual whose signature appears below as 'Independent Contractor,'" but the signing independent contractor is McKrakin Trucking LLC.  The Installment Sales Agreement has similar language with Brandon Hardman dba McKrakin Trucking, LLC as signatory.  And in both cases, the language imposing a personal guaranty on the individual or entity who's already executing the agreement is unusual.[20]

Brandon Hardman "of" McKrakin Trucking, LLC granted ITL a power of attorney to apply for an Iowa certificate of title, but ITL had the certificate issued in the name of McKrakin Trucking LLC rather than Brandon Hardman dba McKrakin Trucking, LLC.  The October 2019 Amendment to the Installment Sales Agreement lists Brandon Hardman dba McKrakin Trucking, Inc. as the original Buyer rather than Brandon Hardman dba McKrakin Trucking, LLC.  The agreements nullify the interpretive significance of any

---

[19] Similarly, the independent contractor in the October 2019 agreement is only B & M Hardman Trucking Inc.
[20] By contrast, the October 2019 Independent Contractor Agreement has a very clear guaranty provision.

5

gendered terms, and punctuation of the entity names is inconsistent throughout the documents.  The Debtor listed the Truck as a personal asset in Schedule B and listed both business entities in the Statement of Financial Affairs, but he also listed no business interests in Question 19 on Schedule B and checked none of the boxes describing the nature of his entity interests in Question 27 on the Statement of Financial Affairs.[21]  In his Verified Statement, the Debtor curiously asserts that McKrakin Trucking, LLC "is a fictitious name and does not exist as a separate legal entity," while B & M Hardman Trucking Inc. is apparently a legitimate and separate legal entity.  The Equipment Termination Checklist has inconsistent references to both Brandon Hardman and B & M Hardman Trucking Inc.[22]  Payments to and from ITL were made with the account for B & M Hardman Trucking Inc., not the Debtor's personal account, even though the Buyer in the Installment Sales Agreement is the obligor for the Truck payments.  Debtor's counsel stated at the October 28 hearing that the Debtor was unable to drive the Truck until the Motion was resolved, and the Debtor's Verified Statement reiterates the Truck's necessity to an effective reorganization, but the Debtor has apparently been able to make his monthly plan payments anyway in the interim.  There are more.

Similar to these factual problems, various legal arguments have been abandoned, unmade, or insufficiently briefed or are tangential to the main issue.  After the November 10 hearing, ITL dropped any argument based on the postpetition termination of the October 2019 Independent Contractor Agreement.  Nobody has argued for voidness, rescission, or reformation of any contracts based on theories of unilateral or mutual mistake.  Nobody

---

[21] Dkt. #42, Ex. M.
[22] *Id.*, Ex. N.

has addressed the naming requirements and limitations for Utah businesses.[23] The parties have an immaterial surface-level debate about whether Iowa or Utah law applies. The Debtor alleges a breach of fiduciary duty in connection with ITL's application for the Iowa certificate of title, while ITL argues for McKrakin Trucking's ability to accept title to property even if its registration was expired at the time of acquisition. Again, there are more.

So what's to be done with the remaining muddle? The main issue at hand is whether the Truck is property of the chapter 13 bankruptcy estate, which § 541(a)(1) expansively defines as "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held." "For purposes of most bankruptcy proceedings, property interests are created and defined by state law. Once that state law determination is made, however, we must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate."[24] Under both Iowa and Utah law, the Court's role in contract interpretation is to give effect to the parties' intent—from a plain reading of the unambiguous terms within the documents' four corners if possible, or using other interpretive tools if not.[25] And despite ITL's argument "that Iowa law is

---

[23] *See, e.g.*, Utah Code Ann. §§ 16-10a-401 *et seq.*, 42-2-5 *et seq.*, and 48-3a-108. It's also interesting to note, as indicated in the opening sentence, that ITL refers to itself in most of its filings as "Iowa Tanklines, Inc. d/b/a ITL Tanklines, Inc."

[24] *In re Marshall*, 550 F.3d 1251, 1255 (10th Cir. 2008); *see also In re Chernushin*, 911 F.3d 1265, 1269-70 (10th Cir. 2018).

[25] *Brady v. Park*, 445 P.3d 395, 407-10 (Utah 2019); *Equine Holdings LLC v. Auburn Woods LLC*, No. 20181022-CA, 2021 WL 504972 at *7-8 (Utah Ct. App. Feb. 11, 2021); *Clement v. Irwin*, 949 N.W.2d 657 (Iowa Ct. App. 2020) (table); *T. Zenon Pharmaceuticals, LLC v. Wellmark, Inc.*, 876 N.W.2d 813 (Iowa Ct. App. 2015) (table) (distinguishing contract interpretation from contract construction); *Lariviere v. Surgical Services, P.C.*, 870 N.W.2d 688 (Iowa Ct. App. 2015) (table).

clear and that the Court cannot recognize a right outside the certificate of title,"[26] it appears that both Iowa and Utah law provide some leeway for the recognition of such interests.[27]

For all of the documents submitted by the parties, the operative documents effectuating the actual purchase and sale of the Truck are the Installment Sales Agreement and the Bill of Sale, both of which list the Buyer as Brandon Hardman dba McKrakin Trucking, LLC. The Bill of Sale—the document that actually transferred ITL's rights in the Truck as opposed to the prospective Installment Sales Agreement—was signed only by Brandon Hardman individually in no corporate capacity. The Installment Sales Agreement was signed "[b]y" Brandon Hardman for "[i]ts: [o]wner/self/officer/partner." So on one level, it could be argued that those documents are unambiguous in the Debtor's favor, regardless of the validity or purpose of using an LLC (and later a corporation) as an assumed business name.

But the Installment Sales Agreement's cross-reference to the non-existent February 2019 Independent Contractor Agreement, combined with the odd guaranty provision and the inherently unclear meaning of using an LLC (and later a corporation) as an individual's assumed business name, could render the documents ambiguous. In that case, unfortunately, the introduction of extrinsic evidence to illuminate the parties' intent only darkens the picture given all the documentary issues discussed above. Of particular note, ITL clearly knew how to limit its counterparty in the January 2016 and October 2019 Independent Contractor Agreements to McKrakin Trucking LLC and B & M Hardman Inc, respectively, while using the "Brandon Hardman dba" construction in the Installment Sales

---

[26] Dkt. #47.
[27] *In re Castillo*, 549 B.R. 916 (Bankr. D. Utah 2016) (Utah law); *In re Loney*, No. BK 10-00323, 2011 WL 133006 (Bankr. N.D. Iowa Jan. 14, 2011) (Iowa law); *In re Bierman*, 133 B.R. 484 (Bankr. N.D. Iowa 1991) (Iowa law).

Agreement, the Bill of Sale, and even the Amendment to the Installment Sales Agreement that was executed on the same date as the October 2019 Independent Contractor Agreement. Also, regardless of its reasons, ITL had the Iowa certificate of title issued only in the name of McKrakin Trucking LLC rather than Brandon Hardman dba McKrakin Trucking, LLC. And lastly, when all other interpretive tools fail, contract ambiguities are resolved against ITL as the drafting party. Accordingly, under any of these rationales, ITL's request for a determination that the Truck is not property of the estate is denied.

As for ITL's alternative request for stay relief, the grounds raised in ITL's papers and at prior hearings are outdated. The Court has no evidence at this time that the Debtor is delinquent on plan payments, that the agreed order resolving Utah Housing Corporation's stay relief motion is in default, or that the Truck is uninsured. The Court also has insufficient evidence at this time to determine that the Truck "is not necessary to an effective reorganization" as required by § 362(d)(2)(B) even if the Debtor has no equity in the Truck. Accordingly, ITL's alternative request for stay relief is also denied, subject to renewing the request in the future if new evidence comes to light or the Debtor defaults on his obligations.

### III. CONCLUSION

There are obviously a number of unanswered questions about the relationship between the Debtor and ITL, the exact extent of the Debtor's interest in the Truck, and the Debtor's business operations. Some of these questions may not only be unanswered but unanswerable. And the Court appreciates ITL's frustration, not least because of having to respond to the sanctions motion, the interest being lost from a 14% contract rate, and the prepetition charges racked up in proof of claim #9-1. But on this particular record, in this

particular matter, and at this particular time, the Court finds that the estate has a sufficient legal or equitable interest in the Truck to support payment of ITL's secured claim #8-1 through a chapter 13 plan and that stay relief under § 362(d)(1) or (2) is unwarranted. Accordingly, for the reasons stated above, the Motion is DENIED, and the Court will enter a separate order in accordance with this memorandum decision.

_____ooo0ooo_____

### CERTIFICATE OF SERVICE

Service of the foregoing **MEMORANDUM DECISION** shall be effected only on the registered CM/ECF users in this case.